FILED

2022 Jan-28  PM 02:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| RENAE PHIPPS, as Administratrix of the Estate of Michelle Nicole Phipps, Deceased,<br><br>    Plaintiff,<br><br>v.<br><br>SHERIFF JODY WADE, CHIEF ERNIE WILSON, and KRYSTAL O. CASH,<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) | 7:20-cv-00036-LSC |

### MEMORANDUM OF OPINION

## I.  INTRODUCTION

Plaintiff Renae Phipps, as Administratrix of the Estate of Michelle Nicole Phipps, Deceased, ("Phipps") brings this action against Defendants Sheriff Jody Wade ("Wade"), Assistant Warden Ernie Wilson ("Wilson"), and Krystal O. Cash ("Cash") (collectively "Defendants"). In Counts One and Two of her Amended Complaint, Phipps asserts violations of both the 8th and 14th Amendments under 42 U.S.C. § 1983 ("§ 1983"). In Count Three, Phipps asserts a State Law Claim for Wrongful Death against Defendants Wade, Wilson, and Cash. In Count Four, Phipps asserts a State Law Claim for *Respondeat Superior* against Defendant Wade.

Presently before the Court are Defendants' Renewed Motion to Dismiss Amended Complaint (Doc. 39) and Defendants' Motion for Summary Judgment (Doc. 55). The motions are fully briefed and ripe for review.

Defendants make substantially similar arguments in their motion to dismiss and their motion for summary judgment. The only new argument raised by Defendants in their motion for summary judgment is that qualified immunity applies to all Defendants as to Count One and to Defendant Wade as to any supervisory claims. Therefore, Defendants' Motion for Summary Judgment subsumes Defendants' Motion to Dismiss in that if summary judgment is due to be granted on any count, those counts would also be due to be dismissed. Likewise, if summary judgment is due to be denied as to any count, then Defendant's motion to dismiss would also be due to be denied. Upon review and for the reasons set forth herein, Defendants' Motion for Summary Judgment (Doc. 55) is due to be GRANTED IN PART and DENIED IN PART and Defendants' Renewed Motion to Dismiss Amended Complaint (Doc. 39) is due to be TERMINATED AS MOOT.

## II.   BACKGROUND[1]

On February 4, 2018, Phipps was arrested for possession of a controlled substance and possession of drug paraphernalia. (Doc. 53–10.) Phipps was booked into Bibb County Jail on that same day. (Doc. 53–12.) According to Officer Clifton Robinson ("Robinson"), Phipps appeared to be under the influence of narcotics when she arrived and was initially placed in a conference room in the booking area so that she could be watched. (Doc. 53–7 at 3.) Once Robinson determined that Phipps had sobered up, she was placed in the women's cell block. (*Id.*) When inmates are booked into Bibb County Jail, they are asked a series of questions to assess any suicidal intentions. (Doc. 53–12.) The answers are supposed to be kept in each inmate's file, but Phipps's answers are missing from the report. (Doc. 53–7 at 3.) Robinson claims that he asked Phipps a series of questions regarding her physical and mental condition in which Phipps stated she was not suicidal. (*Id.*)

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only.  They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . .").

On February 5, 2018, Phipps acted as if she was having a seizure and fell and hit her head. (Doc. 53–20 at 2.) At the direction of Wilson, Phipps was moved to the booking area and placed in a padded cell so that she could be monitored for her possible head injury and drug withdrawals. (Doc. 53–2 at 3.) She was returned to the women's cellblock after exhibiting no symptoms. (*Id.*) Phipps repeatedly used the call button, which was for emergency use only, to alert the control tower. (*Id.*) As a result of her behavior, Phipps was placed on lockdown. (Doc. 53–6 at 3.) Officer Cash was off on February 5th, 2018 and played no role in the events which transpired that day. (Doc. 53–13.)

On February 6, 2018, Phipps pressed the call button and informed the control tower that she had inserted a tube of toothpaste in her rectum. (Doc. 53–2 at 4.) Phipps was scheduled for her initial appearance that same day. (Doc. 53–4 at 3.) Phipps was taken to her court appearance where she was informed of her bond and charges. (*Id.*) Phipps was then taken to the hospital by Cash. (*Id.*) At the hospital, Cash accompanied Phipps to the bathroom where she passed the tube. (*Id.*) Phipps did not mention being suicidal at any point during the court appearance or hospital trip. (*Id.*) Just days before Phipps's February 6, 2018, hospital trip, another inmate, Vickie Pike ("Pike") informed the jail staff that she had inserted an object in her rectum. (*Id.* at 4.) At the hospital, it was learned that Pike lied and that her statement

was merely a ruse to get out of jail. (*Id.*) After returning from the hospital, Phipps and Cash were in the booking area. (*Id.*) Phipps, without permission, drank from the soda that Cash was drinking. (*Id.*) As a result, Phipps was informed that she was going to get additional days in lockdown. (*Id.*) Cash remained on her shift until 10:00 pm and then went home. (*Id.*)

On February 7, 2018, at approximately 2:15 AM, Pike was transferred from Bibb County Jail to Tuscaloosa County Jail. (Doc. 53–21 at 9.) At lunch that day, Phipps requested extra sandwiches and was provided with three but denied a fourth by Officer Christopher Winfield. (Doc. 53–24.) Officer Winfield stated that Phipps never expressed any suicidal intentions during their interaction. (*Id.*) Per Bibb County Jail policy, a routine lockdown occurs after lunch because of a shift change. (Doc. 53–21 at 20.) When the cells were opened after lockdown, Inmate Jackie Averette found Phipps hanging from her bunk. (Doc. 53–25.) Officer Brandon Franklin, the first person to arrive on the scene, received a call at approximately 2:15 PM that Phipps had hung herself. (Doc. 53–8 at 2.) Officer Franklin untied Phipps and noted that CPR would be ineffective. (*Id.*) Officer Franklin then secured the cell and waited for the medics to arrive. (*Id.*) Officer Cash arrived at work at approximately 2:00 PM, heard that Phipps had hung herself, and went to Phipps's

cell with the other officers. (Doc. 53–4 at 4.) Phipps's cause of death was determined as hanging and the manner classified as a suicide. (Doc. 53–19.)

The policy of the Bibb County Jail is that if an inmate expresses suicidal thoughts, the inmate is immediately placed in a suicidal resistant cell, stripped of clothing, placed in a smock, not provided any items that could be used to facilitate suicide, and then closely monitored. (Doc. 53–2 at 5.) An inmate on suicide watch cannot be removed from suicide watch except by a mental health professional after an evaluation. (*Id.*) Inmate Jamie Tennant stated that she never heard Phipps threaten suicide. (Doc. 53–25.) Officer Franklin never heard Phipps threaten suicide. (Doc. 53–8.) Officer Whitfield stated that Phipps expressed no suicidal intentions to him. (Doc. 53–24.) Wilson claims that Phipps never told him that she was suicidal and that no other officer or inmate told him that she was suicidal. (Doc. 53–2 at 5.) Officer Cash claims that Phipps never told her that she was suicidal. (Doc. 53–3 at 7.) However, Pike claims that Phipps told Cash and Wilson that she would kill herself numerous times throughout her first two days in jail. (Doc. 53–20.) Sheriff Wade testified that, if Phipps told the guards that she was suicidal and no care was given to her, then a violation of the prisons policies and procedures occurred. (Doc. 53–5 at 10.)

## III.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[2] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence but determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the nonmoving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing

---

[2]   A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1049 (11th Cir. 2015).

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).  However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987).  Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004)).  In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013).  Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## IV.   DISCUSSION

### A. OFFICIAL CAPACITY CLAIMS

The Eleventh Amendment prohibits suits against Alabama Sheriffs for money damages in their official capacities. *Parker v. Williams*, 862 F.2d 1471, 1476 (11th Cir.

1989), *overruled on other grounds by Turquitt v. Jefferson Cty., Ala.*, 137 F.3d 1285 (11th Cir. 1998). That immunity also extends to jailers and Deputy Sheriffs. *See Lancaster*, 116 F.3d at 1430 ("[J]ailers are state officials for the purpose of Eleventh Amendment immunity."); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1527 (11th Cir. 1990) ("[T]he sheriff's eleventh amendment immunity also extends to deputy sheriffs because of their traditional function under Alabama law as the sheriff's alter ego."). Phipps seeks only money damages, not injunctive relief. Accordingly, her claims may not proceed against any Defendant in their respective official capacities.

## B. Individual Capacity Claims

### 1. Count One

In Count One of Phipps's Amended Complaint (Doc. 15.), she brings claims pursuant to 42 U.S.C. § 1983, asserting that Defendants violated her rights under the Fourteenth Amendment to the United States Constitution. Defendants assert qualified immunity as a complete defense.

"The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "Qualified immunity offers complete protection for government officials

sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). The qualified immunity analysis does not take into account an officer's alleged subjective intent; instead, it "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* Thus, to overcome a public official's entitlement to qualified immunity, a plaintiff must be able to establish not only that the public official acted wrongfully, but also be able to point the court to law existing at the time of the alleged violation that provided "fair warning" that the conduct of the defendants was illegal. *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003).

To be eligible for qualified immunity, the officers must demonstrate that they were acting in the scope of their discretionary authority. *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004). "To determine whether an official was engaged in a discretionary function, [courts] consider whether the acts the official undertook 'are

of a type that fell within the employee's job responsibilities.'" *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (citing *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). "[T]he determination that an officer was acting within his discretionary authority is quite a low hurdle to clear." *Godby v. Montgomery County Bd. of Educ.*, 996 F. Supp. 1390, 1401 (M.D. Ala. 1999). Under the facts here, the incident giving rise to Plaintiff's claims arise from Sheriff Wade's and his jail staff's statutory duty to operate a jail. *See* Ala. Code § 14-6-1. Because Defendants were carrying out their statutory duty of operating the jail, they were acting within the scope of their discretionary authority.

Once determined that officers acted within their discretionary authority, courts use a two-part test to determine whether qualified immunity is proper. In *Saucier v. Katz*, the Supreme Court directed courts to use the following two-part test to determine whether qualified immunity applies: first, the court determines whether there was a constitutional violation; second, the court determines whether the constitutional right in question was clearly established. 533 U.S. 194, 201 (2001). In *Pearson v. Callahan*, the Court abandoned the rigid order of analysis enunciated in *Saucier* and left it to the district courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first

in light of the circumstances in the particular case at hand." 555 U.S. 223, 236 (2009).

### a. CONSTITUTIONAL VIOLATION

A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). To show that the officers' conduct was unconstitutional with obvious clarity, "the unlawfulness must have been apparent." *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003). "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1318 (11th Cir. 2003). Because these Defendants have raised qualified immunity, Plaintiff must demonstrate violations of clearly established law in either of two ways. First, Plaintiff can point to a case with materially similar facts holding that the conduct engaged in was illegal. *Storck*, 354 F.3d at 1317. Second, in absence of case law, Plaintiff must demonstrate that a pertinent federal statute or constitutional provision is specific enough to demonstrate the Defendants' conduct was illegal. *Id.*

The Eleventh Circuit has held that "pretrial detainees ... plainly have a Fourteenth Amendment due process right to receive medical treatment for illness and injuries, which encompass a right to psychiatric and mental health care, and a right to be protected from self-inflicted injuries, including suicide.'" *Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1115 (11th Cir. 2005) (quoting *Cagle v. Sutherland*, 334 F.3d 980, 985 (11th Cir. 2003)). At the time of Phipps's death, it was clearly established that an officer's deliberate indifference to the risk of serious harm to a detainee is a violation of the Fourteenth Amendment. *Snow ex rel. Snow v. City of Citronelle, AL*, 420 F.3d 1262, 1270 (11th Cir. 2005) (quoting *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999)). Here, Inmate Jamie Tennant, Officer Franklin, Officer Whitfield, Wilson, and Cash have all stated that Phipps never threatened suicide. (Docs. 53–2, 53–3, 53–8, 53–24, & 53–25.) However, Pike claims that Phipps told Cash and Wilson that she would kill herself numerous times throughout her first two days in jail. (Doc. 53–20.) Thus, a genuine issue of material fact exists as to whether Phipps's threatened suicide. This conflicting testimony creates an issue of fact for a jury to decide.

### b.  DELIBERATE INDIFFERENCE

"[I]n a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under . . . the . . . [F]ourteenth [A]mendment, the plaintiff must

show that the jail official displayed 'deliberate indifference' to the prisoner's taking of [her] own life." *Cagle*, 334 F.3d at 986 (citing *Edwards v. Gilbert*, 867 F.2d 1271, 1274–75 (11th Cir. 1989)). "To establish a defendant's deliberate indifference, a plaintiff must show that the defendant had (1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] ... that risk; (3) by conduct that is more than mere negligence." *Cagle*, 334 F.3d at 987. "[A] finding of deliberate indifference requires that officials have notice of the suicidal tendency of the individual whose rights are at issue in order to be held liable for the suicide of that individual." *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994). "The final requirement for a deliberate indifference claim is that a defendant have a causal connection to the constitutional harm." *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007).

### i.   CASH AND WILSON

As discussed above, there is conflicting testimony as to whether Phipps threatened suicide and whether Defendants had knowledge of such threats. This conflicting testimony creates an issue of fact for a jury to decide about Cash and Wilson's knowledge of Phipps suicidal threats. Viewing the facts in the light most favorable to Phipps, a jury could find that Cash and Wilson subjectively believed there was a strong risk that Phipps would commit suicide and deliberately did not

take any action to prevent her suicide. Therefore, summary judgment is due to be denied as to Cash and Wilson on Count One.

### ii. WADE

With respect to Defendant Wade, Phipps's claims are based upon his position as Sheriff and supervisor of the Bibb County Jail. Plaintiff stated in her original Complaint:

> The Defendant Wade acted negligently, wantonly, and intentionally which constituted a deliberate indifference to the rights of the Decedent and obligations of the individual Defendants to provide treatment of medical conditions and provide necessary medication and protection to ultimately prevent the Decedent's suicide. This individual Defendant's wanton and deliberate actions, combining and concurring with the negligence of the other individual Defendants proximately caused or contributed to the physical injuries, pain and suffering of the Decedent and proximately caused her death.

(Doc. 8.). "[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional depravation." *Cottone*, 1360 (11th Cir. 2003). A plaintiff establishes a causal relationship between a supervisory official's acts and the acts of his subordinates in one of the three following ways: (1) the supervisor had notice of a widespread history of abuse which he neglected to correct, (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to

constitutional rights, or (3) the facts support "the inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez v. Reno*, 325 F. 3d 1228, 1234–35 (11th Cir. 2003); *see also Harper v. Lawrence County*, 592 F. 3d 1227, 1236 (11th Cir. 2010).

Here, no evidence was presented of a widespread history of abuse. Further, Sheriff Wade did not implement a custom or policy that resulted in deliberate indifference to a constitutional right. The policy of the Bibb County Jail is that if an inmate expresses suicidal thoughts, the inmate is immediately placed in a suicidal resistant cell, stripped of clothing, placed in a smock, not provided any items that could be used to facilitate suicide, and then closely monitored. (Doc. 53–2 at 5.) An inmate on suicide watch cannot be removed from suicide watch except by a mental health professional after an evaluation. (*Id.*) Sheriff Wade testified that, if Phipps did threaten suicide, then a violation of the jails policies and procedures occurred. (Doc. 53–5 at 10.)

Therefore, to demonstrate that Defendant Wade implemented a custom or policy that resulted in deliberate indifference to the Decedent's constitutional rights, Plaintiff needed to show that Defendant Wade had subjective knowledge that his policies were likely to result in violation of a constitutional right. *See Williams v.*

*Limestone County*, 198 F. App'x 893, 897 (11th Cir. 2006). Phipps has failed to either allege or demonstrate any subjective knowledge on the part of Defendant Wade. Thus, Phipps claim pursuant to § 1983 that Defendant Wade violated the Decedent's constitutional rights under the Fourteenth Amendment fails. Accordingly, summary judgment is due to be granted as to Defendant Wade on Count One.

### 2. COUNT TWO

In Count Two of Phipps's Amended Complaint, she brings claims pursuant to 42 U.S.C. § 1983, asserting that Defendants violated her rights under the Eighth Amendment to the United States Constitution. Defendants assert that Phipps was not protected by the Eighth Amendment because she was a pretrial detainee. (Doc. 56 at 15.) Phipps failed to contest Defendants' assertions. As a result, Count Two has been abandoned and this Court grants summary judgment accordingly.[3]

---

[3] Federal courts in this circuit, as well as in others, have found that a party's failure to respond to or to oppose arguments raised in a pending motion may result in an abandonment of those issues. *See, e.g., Hooper v. City of Montgomery,* 482 F.Supp.2d 1330, 1334 (M.D. Ala. 2007) (finding that the plaintiff's failure to respond to certain arguments raised in defendant's motion to dismiss resulted in the abandonment and subsequent dismissal of those claims); *Black v. Panola Sch. Dist.,* 461 F.3d 584, 588 n. 1 (5th Cir. 2006) (explaining that the plaintiff's failure "to pursue [a] claim beyond her complaint constituted abandonment."). Similarly, "[i]t is not for the court to manufacture arguments on Plaintiff's behalf." *Bowden ex rel. Bowden v. Wal–Mart Stores, Inc.,* 124 F.Supp.2d 1228, 1236 (M.D. Ala. 2000); *cf. Resolution Trust Corp. V. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.").

However, even if the claims in Count Two were not abandoned, summary judgment is still due to be granted. Phipps was a pretrial detainee when she committed suicide. "It is well settled that the Eighth Amendment prohibitions against cruel and unusual punishment do not apply to pretrial detainees." *Tittle v. Jefferson County Comm'n,* 10 F.3d 1535, 1539 n. 3 (11th Cir. 1994) (en banc) (citing *Ingraham v. Wright,* 430 U.S. 651, 671–72 n. 40, 97 S.Ct. 1401, 1412–13 n. 40, 51 L.Ed.2d 711 (1977)). Accordingly, summary judgment is due to be granted as to all Defendants.

### 3.  COUNT THREE

In Count Three of her Amended Complaint, Phipps asserts a state law claim of wrongful death. Defendants Wade, Wilson, and Cash ask this Court to dismiss these claims on the ground that they are entitled to immunity. Phipps has failed to raise any argument in support of her state-based tort claims against Defendant Wade. Thus, Phipps has abandoned her claim in Count Three against Defendant Wade. *Humphrey*, 2012 WL 25688206 at *2 (M.D. Ala. July 2, 2012) ("[A] party's failure to respond or to oppose arguments raised in a pending motion [to dismiss] may result in an abandonment of those issues."). Even if Phipps did not abandon her state-based tort law claims for wrongful death, Defendant Wade is immune due to his position as Sheriff of Bibb County. Sheriffs are granted absolute immunity from lawsuits when "acting within the line and scope of their employment." Ala. Const. Art. 1 §

14; *Ex parte Sumter County*, 953 So. 2d 1235, 1239 (Ala. 2006). This immunity bars state-based tort claims against sheriffs in Alabama. *See e.g., Timney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996); *Ex parte Blankenship*, 893 So. 2d 303, 305 (Ala. 2004); *Ex parte Haralson*, 871 So. 2d 802, 807 (Ala. 2003). Here, all claims against Wade stem from actions within the line and scope of his employment. Wade has a responsibility to make sure all the rules and regulations at Bibb County Jail are followed. (Doc. 53–5 at 7).  Phipps asserts that Wade failed to ensure the policies were followed and failed to ensure Phipps was receiving proper care during her time at Bibb County Jail. Thus, Wade was acting, or failing to act, within the line and scope of his employment. Accordingly, summary judgment is due to be granted on Count Three as to Defendant Wade based upon his immunity.

Defendants Cash and Wilson argue that they too are entitled to immunity on the state law claim brought in Count Three. Defendants Cash and Wilson point to Ala. Code § 14-6-1 in support of this proposition. "Section 14-6-1 of the Alabama Code provides immunity for jail guards "as long as such persons are acting within the line and scope of their duties and are acting in compliance with the law." § 14-6-1. In addition, Alabama state-agent immunity shields state employees from tort liability regarding discretionary acts unless they acted willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under mistaken interpretation

of the law; violated federal or constitutional law; or did not comply with Alabama law, rules, or regulations. *Taylor v. Hughes*, 920 F.3d 729, 734 (11th Cir. 2019) (quoting *Hollis v. City of Brighton*, 950 So. 2d 300, 307-08 (Ala. 2006)). However, § 14-6-1 and state-agent immunity do not immunize guards from liability under state law where a constitutional violation exists. *Id* at 734; *Ex parte Rizk*, 791 So. 2d 911 913-14 (Ala. 2000) (stating that state-agent immunity does not protect state agents when the constitution or law of the United States requires otherwise). As discussed above, a genuine issue of material fact exists as to whether the officers alleged conduct was unconstitutional. Accordingly, summary judgment is due to be denied as to Wilson and Cash on Count Three.

### 4.  COUNT FOUR

In Count Four of her Amended Complaint, Phipps asserts a state law claim of *Respondeat Superior* against Defendant Wade. Defendant Wade asks this Court to dismiss these claims on the ground that he is entitled to immunity. Phipps has failed to raise any argument in support of her state-based tort claims against Defendant Wade. Thus, Phipps has abandoned her claim in Count Four against Defendant Wade. *Humphrey*, 2012 WL 25688206 at *2 (M.D. Ala. July 2, 2012) ("[A] party's failure to respond or to oppose arguments raised in a pending motion [to dismiss] may result in an abandonment of those issues."). As discussed above, even if Phipps

did not abandon her state-based tort law claims for *Respondeat Superior*, Defendant Wade is immune as he was acting within the line and scope of his employment as Sheriff of Bibb County. Accordingly, summary judgment is due to be granted as to Count Four.

## V.  CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. 55) is due to be GRANTED IN PART and DENIED IN PART. As to Phipps's claims against all Defendants in their official capacities, the motion is due to be GRANTED. The motion for summary judgment is due to be GRANTED as to Defendant Wade on all Counts. The motion is due to be DENIED as to Defendants Wilson and Cash on Count One and Three. The motion is due to be GRANTED as to Defendants Cash and Wilson on Count Two. Accordingly, Defendants' Renewed Motion to Dismiss Amended Complaint (Doc. 39) is due to be TERMINATED AS MOOT. An Order consistent with this Opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on January 28, 2022.

_____
L. Scott Coogler
United States District Judge

206770